UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
FILED
JUL 15 2004
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 04-317-KSF

SHIELD ENVIRONMENTAL
ASSOCIATES, INC.,                                                                      PLAINTIFF

V.                             **OPINION & ORDER**

INTERNATIONAL ENERGY AND
RESOURCES, INC. and
INTERNATIONAL ENERGY AND
RESOURCES, INC., as Managing
Venturer of THE CHASTAIN JOINT VENTURE I               DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon motion of Plaintiff Shield Environmental Associates, Inc. ("Shield") for a temporary restraining order. A hearing having been held on this matter, it is ripe for review.

Shield herein seeks a temporary restraining order against Defendants International Energy Resources, Inc. ("IER") for itself and as Managing Venturer of the Chastain Joint Venture I (collectively "Defendants") enjoining them from soliciting investors or otherwise offering to sell securities through the document entitled "Chastain Mine Overview" (Exhibit G) or through any other representations concerning Shield. Shield also requests that this Court enjoin IER from delivering to anyone any report or other work product of Shield and that IER be directed to provide Shield with the names and addresses of all parties to whom defendants have delivered the Chastain Mine Overview so that said parties can be informed regarding the Complaint filed herein and any preliminary injunction entered by this Court.

1

I.  **RELEVANT FACTUAL BACKGROUND**

In 2003, Shield contracted with IER to conduct a pre-engineering feasibility study to determine whether, based on the preliminary data available, IER should undertake a more extensive exploratory evaluation to determine the potential for a larger scale gold mining operation at a site known as the Chastain Mine.

As part of its pre-engineering study, Shield considered factors including the potential amount of ore "in the ground" based upon proved and probable reserves and currently unverifiable but possible resources as projected by preliminary geological studies, the potential costs to extract the ore deposits, and the likely costs of further exploration. Shield's study concluded that the preliminary data warranted a more extensive exploration. Consistent with this conclusion, Shield recommended that IER conduct a limited pilot program of 100 ton per day to better determine the amount of ore and the costs of excavation before proceeding with a full scale mining operation.

Shield delivered these conclusions to IER in two reports. In preparing these reports, Shield asserts that it incurred approximately $277,000 in fees and costs, and that IER still owes Shield $240,000 of that amount. Shield further claims that it has since terminated its contractual relationship with IER.

After receiving Shield's reports, IER utilized various portions of the information contained therein to prepare "The Chastain Mine Overview" (the "Overview"), a document that has been distributed to potential investors with an eye toward raising money for a full-scale mining operation at the Chastain Mine. The Overview is a full-color, 31-page document complete with a five-year plan for the project, a preliminary budget and schedule, and information on estimated investment return figures. The Overview is appended with several

pages of exhibits to support claims being made therein - said exhibits consist mainly of letters and memoranda documenting Shield's progress on the Chastain Mine pre-engineering study. The majority of the documents are written by Kevin Jones ("Jones"), a Shield employee, on Shield letterhead and sent to John Owen ("Owen") and other IER executives. It is this Overview that forms the basis of the claims at bar.

Shield alleges that in the Overview IER misrepresented Shield's findings and connection to the potential project in such as way as to mislead potential investors in violation of the Securities Exchange Act of 1934 and the Lanham Act. Shield also alleges that because its findings were, by contract, for IER's use alone, the dissemination of selective portions of said findings to potential investors through the Overview violated the parties' contractual agreement.

## II MOTION FOR TEMPORARY RESTRAINING ORDER

The purpose of a temporary restraining order is to preserve the status quo until the Court can more fully adjudicate the rights of the parties. *See Cathedral Rock of North College Hill, Inc. v. Shalala,* 223, F.3d 354, 358 (6th Cir. 2000). While the agreement between IER and Shield contains an arbitration provision, this Court has the authority to grant preliminary injunctive relief to preserve the movant's rights during the pendency of the arbitration. *See Performance Unlimited, Inc. v. Questar Publishers, Inc.,* 52 F.3d 1373, 1377-78 (6th Cir. 1995); *Linton Wells v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 919 F.Supp. 1047, 1050 (E.D. Ky. 1994). In deciding whether to grant temporary injunctive relief, this Court balances four factors: 1.) whether the movant will likely prevail on the merits of its claim; 2.) whether the movant will suffer irreparable injury if the court does not grant the relief requested; 3.) whether the injunction will cause substantial harm to third parties; and 4.) whether issuing the injunction would serve the public interest. *Frisch's Restaurant, Inc. v. Shoney's Inc.,* 759 F.2d 1261, 1263 (6th Cir.

3

1985). No single factor controls this analysis. *In re Delorean Motors Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

While this Court has not yet been presented with sufficient evidence regarding the alleged breach of contract or Securities Exchange Act violations to issue a temporary restraining order on those grounds, this Court finds that a temporary restraining order is warranted in this instance based on a potential violation of the Lanham Act.

### 1. Merits of the Claim

This Court first finds that there is a strong likelihood that Shield will prevail on the merits of its Lanham Act claim.[1] In order to prevail on this claim, both in an action for damages and for injunctive relief, Shield must demonstrate that the use of its name in connection with the Overview will likely cause confusion or deceive potential investors as to the affiliation, connection, association, or endorsement of Shield with the IER offering. 15 U.S.C. § 1125 (a).

Shield herein alleges that IER 1.) misrepresented the *reserves* at the Chastain Mine to exceed $400 million, whereas in fact, as set forth in Shield's report to IER, the actual reserves at the property were less than $4 million (Exhibit G at 1); 2.) misrepresented a preliminary Shield

---

[1] The Lanham Act, at 15 U.S.C. § 1125 (a) provides:
a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

4

e-mail correspondence as reflecting an *evaluation* of the Chastain Mine at approximately $419 million, whereas in fact the referenced correspondence combined untested *resources* along with actually verifiable reserves to reach a potential value of ore in the ground of $419 million - not accounting for the potential costs of extracting that ore (Exhibit G at 9); 3.) misrepresented to potential investors Shield's role in the Chastain project by stating that Shield was to "direct" the mining operation described in the offering materials and that Shield was a part of the "IER Team, whereas in fact Shield claims that it has severed all contractual ties with IER and will not have any further role in the project (Exhibit G at 1); and perhaps most persuasively, 4.) misused Shield's logo and name in connection with IER's 2004 Income and Cost Projection, thereby presenting said projections as if they were prepared by Shield, whereas in fact those projections were neither prepared by Shield nor based on anything found by Shield in the course of performing its analysis (Exhibit G at 24).

Based on an examination of the above-referenced portions of the Overview, as well as the Overview as a whole, this Court finds that the material contained therein could be misleading to potential investors, particularly with respect to Shield's involvement in the Chastain Mine project. This Court thus finds that the first element - likelihood of success on the merits - is met with respect to this claim.

### 2. Irreparable Injury to Movant

The Sixth Circuit does not require any particular showing of irreparable harm to obtain injunctive relief in Lanham Act cases because the law presumes that irreparable harm flows from this type of activity. *See, e.g., Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999); *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991)(noting that irreparable injury "ordinarily follows when a likelihood of confusion or possible risk to

5

reputation appears").

### 3. Potential Harm to Third Parties

IER will not be injured by the limited temporary restraining order being issued in this instance. IER, under this Court's order, must do two things: 1.) Cease dissemination of the Overview materials, *see* Exhibit G, pending a full hearing on Shield's motion for a preliminary injunction, and 2.) Inform any investor who will imminently invest money in the Chastain Mine project between now and the date of the hearing on the preliminary injunction that there is a dispute between Shield and IER, and that the record of said dispute is on file in the Eastern District of Kentucky. Requiring IER to wait one week to use the Overview in its attempt to solicit investors for the Chastain Mine project does not amount to substantial harm sufficient to outweigh that which Shield might suffer if it is improperly implicated in this project.

### 4. Public Interest

This Court finds that preventing the potential confusion to investors that could arise from the use of this Overview is in the public interest. *See Donoghue v. IBC/USA (Publications), Inc.*, 886 F.Supp. 947, 1015 (D. Mass. 1988)("Preventing consumer confusion is clearly in the public interest"). Furthermore, the primary goal of the Lanham Act is the provision of truthful and accurate information to the investing and buying public.

### III. CONCLUSION

Based on the foregoing, and this Court being otherwise fully and sufficiently advised, it is hereby ordered that:

1.) Plaintiff's Motion for Temporary Restraining Order is GRANTED to the extent that:

2.) Defendants are hereby ORDERED to cease dissemination of the document

6

entitled "The Chastain Mine Overview" pending a full hearing on Plaintiff's Motion for a Preliminary Injunction, and are FURTHER ORDERED to inform any person who seeks to invest money in the Chastain Mine project between today and the date of the hearing on the preliminary injunction that there is an ongoing dispute between Plaintiff and Defendant and that the record of said dispute is on file in the U.S. District Court for the Eastern District of Kentucky;

3.) This Temporary Restraining Order takes IMMEDIATE EFFECT; and

4.) Plaintiff is directed to POST BOND in the amount of $10,000 with the Clerk of this Court by the end of business July 14, 2004.

This __15th__ day of July, 2004.

_KSF_
KARL S. FORESTER, CHIEF JUDGE